**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-cv-21117-ALTONAGA/GOODMAN**

MERCEDES SHAMBURGER,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

**ORDER ON PLAINTIFF'S REQUEST TO COMPEL PASSENGER INJURY**
**STATEMENTS AND PHOTOGRAPHS CONCERNING OTHER INCIDENTS**

     This Order is the latest ruling in an ongoing series of discovery disputes arising from Plaintiff's continuing and evolving efforts to obtain discovery about prior incidents similar to her fall on a gangway of one of Defendant Carnival's ships. In the past four months, the Undersigned has provided Plaintiff with *considerable* discovery. Plaintiff's counsel has been tenacious in his ever-expanding discovery demands for other incident information, and he has obtained a comparatively large amount of discovery in a garden-variety[1] slip-and-fall lawsuit.

---

[1]     The Complaint [ECF No. 1, ¶ 16] alleges that Plaintiff's primary injury is "multiple open fractures in her left ankle."

Specifically, the Undersigned has required Carnival to: (1) conduct a third search for cases where passengers slipped and/or fell on aluminum, metal, or diamond plate gangways going back three (3) years from the date of the incident and on a fleetwide basis; (2) disclose whether (at the time of Plaintiff's fall) it had written policies or procedures concerning slip-resistant measures taken on or near the gangway when gangways are wet; (3) explain whether it took any steps during the three (3) years before the incident to measure gangway angles at the Cayman Islands port; and (4) divulge whether it had any written policies and procedures for measuring gangway angles in order to check or improve safety. [ECF No. 77].

The Undersigned also required Carnival to: (1) prepare its representative to testify about safety committee meeting minutes already produced by Carnival in this case; (2) prepare a witness to discuss any studies or reviews (by Carnival or a consultant) of slip and/or fall incidents concerning wet or rain-soaked gangways at the Cayman Islands port (or which included the Cayman Islands port), including any findings, conclusions, and/or recommendations in the five (5) years before the incident; (3) provide facts supporting Carnival's comparative or contributory negligence affirmative defenses; and (4) have a designee testify about whether Carnival had implemented any post-incident written safety procedure(s) concerning the gangways Carnival used in the Cayman Islands. *Id.*

And, at a subsequent discovery hearing, the Undersigned ordered Carnival to produce the redacted, one-page handwritten note prepared by its rebuttal liability expert David Martyn and to provide the names of all photographers who worked for Carnival during Plaintiff's cruise. At this hearing, the Undersigned deferred ruling on Plaintiff's *ore tenus* request to expedite Defendant's responses to Plaintiff's Sixth Supplemental Request to Produce (concerning videos, photographs, and passenger injury statements) to allow the parties to brief the issue. [ECF No. 86].

The parties filed their legal memoranda addressing the work product doctrine [ECF Nos. 90; 91; 93] and Carnival filed two blank passenger injury statement templates [ECF Nos. 94-1; 94-2]. The Undersigned ordered Carnival to conduct a one-week, reasonable investigation into whether any responsive CCTV footage existed from the 22 prior incidents and to produce that CCTV footage (if any) to Plaintiff and file an explanatory declaration if it was unable to locate footage from any incident. [ECF No. 96, p. 3].[2]

---

[2]      In accordance with the Undersigned's ruling [ECF No. 96], Carnival filed the declaration of its Guest Claims Manager, Monica Borcegue. [ECF No. 97-1]. Ms. Borcegue attested that as to incidents #7 (Sharon Arthur), #11 (Patricia Nemec), #12 (Barbara Warren), #13 (John Bonn), #14 (Sheryl Hines), #15 (Louise Kelly), #16 (Amelia Mosley), #20 (Aretha Williams), and #22 (George Wyatt), "no CCTV footage was ever preserved[.]" *Id.* at ¶ 6. CCTV footage from alleged incidents #1 (Felix Abitbul), #2 (Kasandra Woods), #3 (Li Li), #4 (Amanda Difiglio), #5 (Ronald Sweet), #6 (Robert Beers), #8 (Fernandel Cortez), #9 (Chrystal Boykins), #10 (Hope Tuck), #17 (Jack Rembecki), #18 (Michael Blocker), and #21 (Charles Bradshaw) was no longer available due to the passage of time. *Id.* at ¶¶ 7, 10. Carnival produced to Plaintiff CCTV footage from incident #19 (India Clemons) on December 8, 2023. *Id.* at ¶ 9.

Concerning photographs and videos, the Undersigned determined that "Plaintiff ha[d] not met her burden of establishing substantial need and undue hardship because she ha[d] made *no effort* to obtain the substantial equivalent of the information sought from other sources, despite having [had] the contact information for all 22 passengers since November 1, 2023." *Id.* at 5 (emphasis in original). Nonetheless, the Undersigned "provided Plaintiff with an opportunity to meet th[at] standard" by "first tak[ing] the step of contacting the 22 passengers and attempting to obtain the *substantial equivalent* of the information sought from those passengers," noting that "[i]t [was] not enough for Plaintiff to speculate that the other passengers would likely not have photographs, videos, or copies of their passenger statements." *Id.* at 6.

The Undersigned further ruled that the passenger injury statements were protected by the work product doctrine, relying in part on representations made in a declaration submitted by Carnival's Director of Guest Claims & Staff Counsel, Suzanne Brown Vazquez [ECF No. 91-1]. *Id.* at 8. I further determined that, at the time, "Plaintiff ha[d] not carried her burden of establishing substantial need and undue hardship," again noting that "[i]t [did] not appear that Plaintiff or her counsel ha[d] made any efforts to contact the 22 passengers whose statements Plaintiff [sought] to compel[.]" *Id.* at 9.

The Order concluded by stating:

> If Plaintiff wishes to renew her substantial need/undue hardship argument with specific information about Plaintiff's (and/or her counsel's) efforts to contact the passengers, or to schedule the depositions of those passengers, then **Plaintiff (or her counsel) must file a declaration explaining what**

4

> **steps she and/or he took to obtain the substantial equivalent of the information (from the videos, photographs, and injury statements) from each of the passengers and why she cannot obtain the substantial equivalent of the information sought**.

*Id.* (emphasis added).

Thereafter, Plaintiff filed an affidavit from her counsel, Brett Rivkind. [ECF No. 98-1]. Mr. Rivkind stated that his legal assistants attempted to contact each of the 22 passengers through telephone calls and letters. *Id.* at ¶¶ 2–3. Of the 22 passengers, Plaintiff's counsel's assistants were able to speak with 11 of them: Kasandra Woods (#2), Robert Beers (#6), Fernandel Cortez (#8), Hope Tuck (#10), Patricia Nemec (#11), John Bonn (#13), Sheryl Hines (#14), Louise Kelly (#15), Michael Blocker (#18), India Clemons (#19), and George Wyatt (#22). Many of those passengers remembered specific details about their incident. For instance, Ms. Woods recalled that it was raining, the gangway was silver or metal looking, and there were no anti-skid strips in the area, or some strips were sticking up and worn. *Id.* at 4.b. However, none of the passengers had photographs or copies of their injury statements.

Plaintiff's counsel argues that although some of the passengers recalled their incidents, "[t]here is no ability to duplicate the information obtained at the time of the incident by [D]efendant" and that "the passenger's recollection at the time of the incident would like to be used [sic] by [D]efendant if there are any inconsistencies, and there is no way to duplicate a personal passenger injury statement written b[y] the person who fell at or near the time of the incident, which is more than five (5) years ago." *Id.* at ¶ 7.

He further states that his "liability expert would like to see photos of gangways in order to confirm the gangway was constructed of a substantially similar material." *Id.* at ¶ 6. Counsel contends that "there is simply no ability to duplicate the information contained in a photograph taken at or near the time of the incident, especially in this case as the past incidents are more than five years ago." *Id.* at ¶ 8.

Thus, Plaintiff's latest discovery demand is for an Order requiring Carnival to turn over passenger injury statements and photographs. The Undersigned has already deemed these materials to be covered by the work product doctrine [ECF No. 96, pp. 5, 8], but Plaintiff contends that she has met the exception for obtaining factual work product.

At the Undersigned's direction, Carnival filed a memorandum addressing Mr. Rivkind's affidavit. [ECF No. 100]. Carnival states that, due to the passage of time, it is no longer in possession of photographs and/or passenger injury statements for incidents #1 (Felix Abitbul), #2 (Kasandra Woods), #4 (Amanda Difiglio) and #5 (Ronald Sweet). *Id.* at 1. It further states that "no photographs were taken with respect to [i]ncident #9 [(Chrystal Boykins)] and no passenger injury statement was obtained from the passenger involved in [i]ncident #13 [(John Bonn)]." *Id.*

The Undersigned will not compel Carnival to produce items which do not (or no longer) exist. Therefore, the Undersigned **denies** Plaintiff's request to compel the production of photographs and injury statements from incidents #1 (Felix Abitbul), #2

(Kasandra Woods), #4 (Amanda Difiglio), and #5 (Ronald Sweet); photographs from incident #9 (Chrystal Boykins); and the passenger injury statement from incident #13 (John Bonn).

Concerning the remaining passenger injury statements and photographs, Carnival maintains that Plaintiff failed to meet her burden of showing substantial need and undue hardship. [ECF No. 100]. Carnival notes that it was able to speak to *some* of the passengers[3] who Mr. Rivkind advised (in his affidavit) were not responsive to his staff's attempts to contact them by telephone and mail. It further notes that Plaintiff's counsel's own affidavit reflects that many of the passengers recalled specific details about their incidents, even years later. *Id.* Moreover, Carnival notes that Plaintiff has not shown that the injury statements contain more detail than the passengers provided over the telephone or provided in Carnival's Third Supplemental Answers to Interrogatories [ECF No. 91-2]. *Id.* at 3.

Carnival further notes that even if Plaintiff were to obtain these passenger injury statements, they likely would be of little help to her given that the discovery period ended on December 21, 2023 and these statements are inadmissible hearsay. *Id.* It also notes that Plaintiff did not attempt to subpoena for deposition any of the 22 witnesses or to obtain

---

[3]     Carnival was able to speak to Felix Abitbul (#1), the wife of Ronald Sweet (#5), Sharon Arthur (#7), Chrystal Boykins (#9), and Barbara Warren (#12) on December 20, 2023. [ECF No. 100, p. 2 n.1].

additional facts about the prior incidents during (or after) the November 15, 2023 second deposition of Carnival's corporate representative. *Id.* at 6.

At the Undersigned's direction [ECF No. 101], Carnival filed the existing passenger injury statements under seal. [ECF No. 102].[4] The Undersigned reviewed the passenger injury statements *in camera*.

Notably, in its Third Supplemental Answers to Interrogatories, Carnival stated that it "conduct[ed] an additional (third) search of prior incidents for cases where passengers slipped and fell on any **wet gangways made of aluminum, metal or diamond plate** in any port where Carnival ships traveled to" and then proceeded to describe (in paragraph form) the 22 incidents at issue. [ECF No. 91-2, pp. 4–11 (emphasis added)]. Thus, the mere inclusion of these incidents tells Plaintiff that the subject gangways were wet and made of aluminum, metal and/or diamond plate.

As noted above, Carnival is no longer in possession of passenger injury statements from incidents **#1 (Felix Abitbul)**, **#2 (Kasandra Woods)**, **#4 (Amanda Difiglio)**, and **#5 (Ronald Sweet)**. Carnival will not be required to produce what it no longer possesses. This is the litigation application of the well-known expression "you can't get blood out

---

[4]     Carnival filed under seal passenger injury statements for incidents #3 (Li Li), #6 (Robert Beers), #7 (Sharon Arthur), #8 (Fernandel Cortez), #9 (Chrystal Boykins), #10 (Hope Tuck), #11 (Patricia Nemec), #12 (Barbara Warren), #14 (Sheryl Hines), #15 (Louise Kelly), #16 (Amelia Mosley), #17 (Jack Rembecki), #18 (Michael Blocker), #19 (India Clemons), #20 (Aretha Williams), #21 (Charles Bradshaw), and #22 (George Wyatt). [ECF No. 102].

of a stone."

Concerning incident **#3 (Li Li)**, neither Plaintiff nor Carnival were able to speak to this passenger. Nonetheless, the Undersigned will not require Carnival to produce this injury statement because the information concerning the gangway and the circumstances of her fall are no more detailed than what was already disclosed in Carnival's Third Supplemental Answers to Interrogatory No. 4. [ECF No. 91-2, p. 5].

Plaintiff was able to speak with the passenger involved in incident **#6 (Robert Beers)**. The Undersigned will not compel Carnival to turn over Mr. Beers' passenger injury statement because Plaintiff spoke to Mr. Beers about his fall. In his telephone conversation with Mr. Rivkind's staff, Mr. Beers provided "some details," including that the "gangway was very slippery" and that "it was [a] metal or aluminum gangway." [ECF No. 98-1, ¶ 4.f.]. Plaintiff has not shown substantial need for Mr. Beers' passenger injury statement given the information provided by Mr. Beers and Carnival's supplemental answers to Interrogatory No. 4, which state that "[Mr. Beers] slipped and fell "on water or something wet" on the metal gangway attached to the ship. [ECF No. 91-2, p. 6].

The Court will not compel Carnival to turn over the passenger injury statement for incident **#7 (Sharon Arthur)**. The Undersigned notes that while Plaintiff's staff was unable to speak to Ms. Arthur and the person who answered the phone said it was the wrong number [ECF No. 98-1, ¶ 4.g.], Carnival was able to speak to her [ECF No. 110, p.

2 n.1]. Plaintiff has failed to show a substantial need because her efforts to contact Ms. Arthur were clearly inadequate.

Plaintiff's counsel's staff was able to speak to the passenger involved in incident **#8 (Fernandel Cortez)**. [ECF No. 98-1, ¶ 4.h.]. Although he "didn't recall a lot of details," he remembered the "gangway was like a metal material." *Id.* Moreover, Carnival's supplemental answers to Interrogatory No. 4 informed Plaintiff that "[t]he gangway was wet due to rain at the time of the incident." [ECF No. 91-2, p. 6]. The Undersigned will not require Carnival to produce Mr. Cortez's passenger injury statement given the information disclosed by Carnival in its supplemental answers to Interrogatory No. 4 and because Plaintiff was able to speak to Mr. Cortez.

The Court will not compel Carnival to turn over the passenger injury statement for incident **#9 (Chrystal Boykins)**. Although Plaintiff's staff was unable to speak to Ms. Boykins [ECF No. 98-1, ¶ 4.i.], Carnival was able to speak to her [ECF No. 110, p. 2 n.1]. Plaintiff has failed to show a substantial need because her efforts to contact Ms. Boykins were clearly inadequate.

The Court finds that Plaintiff has shown both substantial need and undue hardship for the passenger injury statement for incident **#10 (Hope Tuck)**. Neither Plaintiff nor Carnival were able to speak to Ms. Tuck. [ECF No. 98-1, ¶ 4.j.]. Moreover, Ms. Tuck's passenger injury statement contains more details about the condition of the gangway than were disclosed in Carnival's supplemental answers to Interrogatory No.

4. [ECF No. 91-2, p. 7].

Plaintiff has also shown both substantial need and undue hardship for the passenger injury statement for incident **#11 (Patricia Nemec)**. Plaintiff's counsel's staff spoke to Ms. Nemec, who stated she did not remember the incident. [ECF No. 98-1, ¶ 4.k.]. Moreover, Ms. Nemec's passenger injury statement contains more details about the condition of the gangway than were disclosed in Carnival's supplemental answers to Interrogatory No. 4. [ECF No. 91-2, p. 7].

The Court will not compel Carnival to turn over the passenger injury statement for incident **#12 (Barbara Warren)**. While Plaintiff's staff was unable to speak to Ms. Warren [ECF No. 98-1, ¶ 4.l.], Carnival was able to speak to her [ECF No. 110, p. 2 n.1]. Plaintiff has failed to show a substantial need because her efforts to contact Ms. Warren were clearly inadequate.

As noted above, there is no passenger injury statement for incident **#13 (John Bonn)**; therefore, there is nothing to compel. Moreover, Plaintiff's counsel's staff spoke to Mr. Bonn [ECF No. 98-1, ¶ 4.m.] and Carnival provided details about Mr. Bonn's fall in its supplemental answers to Interrogatory 4 [ECF No. 91-2, p. 8].

The Undersigned will not compel the passenger injury statement for incident **#14 (Sheryl Hines)**. Plaintiff's counsel's staff spoke to Ms. Hines, who reported that "[s]he slipped and fell on a gangway and broke her ankle." [ECF No. 98-1, ¶ 4.n.]. But there is no indication in Plaintiff's counsel's affidavit that Ms. Hines did not remember the

11

incident or that she had difficulty recalling it. Therefore, the Undersigned finds that Plaintiff has *not* shown substantial need.

The Undersigned will not compel the passenger injury statement for incident **#15 (Louise Kelly)**. Plaintiff's counsel's staff spoke to Ms. Kelly [ECF No. 98-1, ¶ 4.o.]. She reported that she "slipped and fell on a metal gangway" and that "there were no warning or caution signs that the gangway was wet." *Id.* Moreover, there is no indication in Plaintiff's counsel's affidavit that Ms. Kelly did not remember the incident or that she had difficulty recalling it.

Plaintiff has shown both substantial need and undue hardship for the passenger injury statement for incident **#16 (Amelia Mosley)**. Neither Plaintiff's counsel's staff nor Carnival were able to reach Ms. Mosley. [ECF No. 98-1, ¶ 4.p.]. Moreover, Ms. Mosley's passenger statement contains more details about the condition of the gangway than were disclosed in Carnival's supplemental answers to Interrogatory No. 4. [ECF No. 91-2, p. 9].

Plaintiff has shown both substantial need and undue hardship for the passenger injury statement for incident **#17 (Jack Rembecki)**. Neither Plaintiff's counsel's staff nor Carnival were able to reach Mr. Rembecki, who has a disconnected Canadian telephone number. [ECF No. 98-1, ¶ 4.q.]. Moreover, Mr. Rembecki's passenger injury statement contains more details about the condition of the gangway than were disclosed in Carnival's supplemental answers to Interrogatory No. 4. [ECF No. 91-2, p. 9].

The Undersigned will not compel the passenger injury statement for incident **#18 (Michael Blocker)**. When Plaintiff's counsel's staff spoke to Mr. Blocker, he did not want to provide information without a court order beyond confirming that he had no videos, photographs, or a copy of his injury statement. [ECF No. 98-1, ¶ 4.r.]. Nonetheless, Carnival's supplemental answers to Interrogatory 4 state that "Mr. Blocker did not report that the gangway was wet" and the "incident [was] being disclosed in an abundance of caution." [ECF No. 91-2, p. 9]. The Undersigned has reviewed Mr. Blocker's filed-under-seal passenger injury statement and it does not contain any reference to a wet gangway. Because there is no indication that Mr. Blocker's incident is similar to Plaintiff's incident, his passenger injury statement would be of little use to Plaintiff. In short, Plaintiff has *not* shown substantial need.

The Undersigned will not compel the passenger injury statement for incident **#19 (India Clemons)**. Plaintiff's counsel's staff spoke to Ms. Clemons. [ECF No. 98-1, ¶ 4.s.]. She recalled that the gangway was wet and "very slippery" and that "there were no warning or caution signs." *Id*. There is no indication in Plaintiff's counsel's affidavit that Ms. Clemons has difficulty recalling the incident. To the contrary, she provided specific details about the incident. Additionally, Carnival produced to Plaintiff CCTV footage from this incident. [ECF No. 97-1, ¶ 9]. Plaintiff has *not* shown substantial need.

Plaintiff has shown both substantial need and undue hardship for the passenger injury statement for incident **#20 (Aretha Williams)**. Neither Plaintiff's counsel's staff nor Carnival were able to reach Ms. Williams. [ECF No. 98-1, ¶ 4.t.]. Moreover, Ms. Williams's passenger statement contains a descriptor of the gangplank which was not disclosed in Carnival's supplemental answers to Interrogatory No. 4. [ECF No. 91-2, p. 10].

Plaintiff has shown both substantial need and undue hardship for the passenger injury statement for incident **#21 (Charles Bradshaw)**. Neither Plaintiff's counsel's staff nor Carnival were able to reach Mr. Bradshaw. [ECF No. 98-1, ¶ 4.u.]. Moreover, Mr. Bradshaw's passenger injury statement contains more details about the condition of the gangway than were disclosed in Carnival's supplemental answers to Interrogatory No. 4. [ECF No. 91-2, p. 10].

The Undersigned will not compel the passenger injury statement for incident **#22 (George Wyatt)**. Plaintiff's counsel's staff spoke to Mr. Wyatt. [ECF No. 98-1, ¶ 4.v.]. Although Mr. Wyatt claimed he "did not recall details" about the incident, he was able to recall that the gangway was "slippery, and no warning signs or cones were present." *Id.* Given the specific details Mr. Wyatt recalled about the incident, Plaintiff has *not* shown substantial need.

The Undersigned will not compel Carnival to produce any photographs. Plaintiff failed to meet her burden in overcoming the work product protection afforded to the photographs. In his affidavit, Plaintiff's counsel states that his "liability expert would *like*

*to see* photos of gangways in order to confirm the gangway was constructed of a substantially similar material." [ECF No. 98-1, ¶ 6 (emphasis added)]. But, as Carnival notes in its memorandum, the deadline to exchange initial expert disclosures and reports was August 25, 2023 and September 15, 2023 for exchanging rebuttal expert disclosures and reports. [ECF No. 100, p. 3 n.3]. Moreover, Plaintiff's expert has already given a deposition, discovery is closed, and a mere review of the photographs may not be sufficient to establish substantial similarities between the gangways.

Moreover, Plaintiff has failed to show undue hardship. Plaintiff's counsel *states* "there is simply no ability to duplicate the information contained in a photograph taken at or near the time of the incident, especially in this case as the past incidents are more than five years ago." [ECF No. 98-1, ¶ 8]. But he does not explain why he could not have created his own photographs by seeking to inspect the gangways and pouring water to recreate the wet conditions during the discovery period. Just because a litigant does an inadequate job of conducting an inspection does not mean that litigant is entitled to work product.

In sum, the Undersigned finds that Plaintiff has failed to show substantial need and undue hardship concerning some of the passenger injury statements and all of the photographs. However, and for the reasons discussed above, Plaintiff has met her burden as to the passenger injury statements for incidents #10 (Hope Tuck), #11 (Patricia Nemec), #16 (Amelia Mosley), #17 (Jack Rembecki), #20 (Aretha Williams), and #21 (Charles

15

Bradshaw).

For those few witness statements which must be produced, Carnival shall do so

by **Wednesday, January 10, 2024**.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 8, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Cecilia M. Altonaga
All Counsel of Record